IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| MaCarthur Day, ) | C/A No.: 3:10-cv-454-JFA |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | **ORDER** |
| Frank Morgan, Connie Long, Ed Estridge, Lee ) | |
| Walker, Ronald Chestnut, Linda Horton, KCSD ) | |
| Kershaw County School District, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This employment litigation matter is before the court upon Plaintiff MaCarthur Day's ("Plaintiff") objections to a United States Magistrate Judge's Report and Recommendation ("R&R"), which recommends that this court grant the Defendants' motion for summary judgment and deny the Plaintiff's motion for summary judgment. Having reviewed the entire record, including the Plaintiff's objections and the Defendants' response to those objections, the court finds the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the court adopts the R&R and fully incorporates it into this order.

**BACKGROUND**

Neither of the parties in this case objected to the Magistrate Judge's thorough recitation of the factual record in this case. Therefore, the court does adopts it for purposes of addressing the Plaintiff's objections. Plaintiff was employed by the Kershaw County School District as a custodian between March 8, 2006 and January 17, 2008. During this time, he suffered several on the job injuries and was assigned to several schools. Plaintiff began his employment at Doby's Mill Elementary School, and while there, he was counseled

1

on three occasions for employment related issues. In a letter dated June 15, 2006, Plaintiff was advised by the school's principal that should he violate any of the directives as set forth in recent meetings or discussed in the correspondence, the principal would not hesitate to recommend that Plaintiff's employment with the School District be immediately terminated.

In June of 2006, Plaintiff was transferred to Camden Middle School and then to Wateree Elementary School. While at Wateree Elementary School, in May of 2007, Plaintiff slipped on a wet floor and sprained his right ankle. His injury was treated and he returned to work without restrictions. Then, for the 2007–2008 school year, Plaintiff was assigned to be a custodian at Pine Tree Hill Elementary School. At this school, Plaintiff continued to have performance issues, including a report from a teacher that Plaintiff confronted her after she reported that her classroom had not been cleaned. Another time, Plaintiff lost his set of keys to the school, which created a security issue until the keys were found the next day. Plaintiff also sustained further on-the-job injuries, including a pulled muscle in his right leg on one occasion and an injured right leg and back from a fall on another occasion. These injuries required several visits to doctors, who placed limited restrictions on the type of duties Plaintiff could perform at work. Eventually, by November 5, 2007, one doctor provided Plaintiff with a note, which informed the School District that Plaintiff would be out of work until further evaluation if he could not work "light duty" with specified restrictions. Plaintiff presented the School District with this doctor's note on November 6, and in response, The School District informed Plaintiff that there were no light duty positions available and asked him to keep it informed of his ability to return to work.

On December 16, 2007, the School District's Assistant Superintendent for Human Resources wrote Plaintiff a letter, which summarized his injuries, restrictions, and work

history for the period between May 3, 2007 and November 6, 2007, the day Plaintiff met with the School District and stopped working because no "light duty" jobs were available for him. The letter indicated that Plaintiff had not reported to work, nor had he provided the School District with an updated medical statement. Plaintiff was also sent a "Certification of Health Care Provider Form" to be completed by his doctor and to be returned by January 7, 2008. On December 19, 2007, Plaintiff obtained a statement from his doctor that he could return to work full time and with no restrictions as of December 21, 2007. The School District was closed from December 21 through January 7, 2008 for Christmas break, but the School District informed Plaintiff to report to work on January 7 at Pine Tree Hill Elementary School.

As requested, Plaintiff showed up for work on January 7, and he met with several school officials to discuss his responsibilities as a full-time custodian, the School District's expectations for his work performance, and the schedules and review procedures essential to his continued employment. At the meeting, Plaintiff was given written "Performance Concerns and Expectations," as well as written "Cleaning Specifications" for Pine Tree Hill Elementary School. Just a few days later, on January 11, the school's principal notified Plaintiff of the deficiencies in his performance for the period of January 7 through January 10, 2008, based on inspections by herself and the head custodian. The need for significant improvement was expressed, and another meeting with Plaintiff was scheduled on January 18, 2008. On January 14, 2008, before the meeting could take place, Plaintiff telephoned the head custodian from a doctor's office and informed him that he was "hurting all over—back, leg, and head," and that he did not know when he would be able to return to work. The head custodian notified the School District's Assistant Superintendent of Human Resources about

Plaintiff's status. On January 17, Plaintiff obtained another return to work form from his doctor stating that he could return to work on light duty on that day with restrictions of lifting no more than five pounds, no pushing or pulling over five pounds, no bending, stooping, or squatting, and limited walking.

In light of the Plaintiff's report, the School District determined that there was no light duty position available to meet the restrictions, and Plaintiff did not return to work after January 17, 2008, but he did seek to maintain his employment with the School District. He applied for additional sick leave and long-term disability benefits. He also pursued workers' compensation benefits. On March 19, 2008, Plaintiff went to the District Office to obtain forms or information concerning sick leave or disability, and according to a staff member at the office, Plaintiff stated that (a) he could understand how an employee could be under so much stress that they could go into the workplace and shoot people; (b) he had to push family and friends away and seclude himself because of his anger due to the stress he was under, and (c) that he did not want to spend his last days behind bars. These comments were reported to the Assistant Superintendent of Human Resources, and she called him the very same day to inform Plaintiff that he was placed on unpaid administrative leave until further notice. Plaintiff denied making any such statements, and he was informed by letter that an inquiry would be conducted to determine what further action would be taken. In the meantime, Plaintiff was prohibited to return to any School District facility for any reason.

The Assistant Superintendent of Human Resources met with Plaintiff and his wife on May 21, 2008, along with the Assistant Superintendent for Operations and the Executive Director of Maintenance, Custodial Services, and Facilities. The day after the meeting, the Assistant Superintendent of Human Resources notified Plaintiff that she was recommending

4

to the Superintendent of the School District that his employment be terminated. She reached this decision because her investigation and review of Plaintiff's record showed "misconduct, failure to follow policy and procedure, and poor job performance . . . ." Plaintiff challenged the Assistant Superintendent's recommendation at an informal hearing before the Superintendent on June 12, 2008. Ultimately, the Superintendent decided to terminate Plaintiff's employment, and the Board of Trustees affirmed the Superintendent's decision.

Now, appearing pro se, Plaintiff brings suit against the School District, alleging (1) violations of the American with Disabilities Act; and (2) retaliation in violation of the South Carolina Workers' Compensation Act; as well as allegations of (3) defamation; (4)violation of his constitutional rights; (5) disability discrimination; and (6) failure to accommodate against several School District employees. Both sides moved for summary judgment, and after reviewing the parties' filings, the Magistrate Judge recommends that this court grant the Defendants' motion for summary judgment in its entirety and deny Plaintiff's motion for summary judgment. In his recommendation to deny the Plaintiff's motion for summary judgment, the Magistrate Judge explains that the Plaintiff's motion does not comply with the standards applicable to summary judgment motions; rather, Plaintiff's motion appears to be a memorandum in opposition to the Defendants' motion for summary judgment. In his objections, Plaintiff does not specifically contest the Magistrate Judge's recommendation to deny his motion for summary judgment, although he does explain that he is not a lawyer. Therefore, the court adopts the Magistrate Judge's recommendation, and to the extent the Plaintiff's submission can be construed to be a motion for summary judgment, it is denied. Just like the Magistrate Judge, however, this court will consider all of the Plaintiff's submissions when reviewing the Defendants' motion for summary judgment.

**LEGAL STANDARDS**

**I.     The Magistrate Judge's Report and Recommendation**

The Magistrate Judge made his review in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02. The Magistrate Judge only makes a recommendation to the court. It has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Parties are allowed to make a written objection to a Magistrate Judge's report within fourteen days after being served a copy of the report. 28 U.S.C. § 636(b)(1). From the objections, the court reviews *de novo* those portions of the R&R that have been specifically objected to, and the court is allowed to accept, reject, or modify the R&R in whole or in part. *Id.*

**II.    Legal Standard for Summary Judgment**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered when a moving party has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Summary judgment should be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. *McKinney v. Bd. of Trustees of Maryland Community College*, 955 F.2d 924, 928 (4th Cir. 1992). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The court remains mindful that Plaintiff appears

before the court pro se, and therefore, his pleadings are accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97 (1976). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

## ANALYSIS

I. **American with Disabilities Act**

   A. **Wrongful Discharge**

All of the Defendants first move the court for judgment as a matter of law with respect to Plaintiff's claim that he violated the American with Disabilities Act ("ADA"). More specifically, Plaintiff claims that the School District and the individual Defendants, all employees of the School District, wrongfully discharged him because he had a disability and failed to accommodate his disability, both in violation of the ADA. After reviewing the factual record in accordance with the applicable law, the Magistrate Judge first determined that the individual defendants are entitled to summary judgment with respect to any claims brought pursuant to the ADA because that law only extends to employers. (R&R at 11 n.3 (citing *Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999) ("We have expressly held that Title VII does not provide a remedy against individual defendants who do not qualify as 'employers.'").) Because the School District employs Plaintiff, rather than the individual Defendants, and because Plaintiff did not object to this finding of the Magistrate Judge, the court adopts his recommendation and grants the individual Defendants motion for summary judgment with respect to any claims asserted under the American with Disabilities Act.

Plaintiff does specifically object to the Magistrate Judge's finding that the School

7

District is entitled to summary judgment as to the claims that it violated the ADA. First, Plaintiff claims that the School District wrongfully discharged him because of his disability.[1] The School District argued, and the Magistrate Judge agreed, that Plaintiff could not establish such a claim because, at the time of his termination, he was not meeting the School District's legitimate expectations and that the circumstances of his discharge do not raise a reasonable inference of discrimination. (R&R at 12.) To reach this finding, the Magistrate Judge looked at Plaintiff's work history. In particular, the Magistrate Judge highlighted the fact that within four months of Plaintiff joining the School District in March of 2006 as a custodian at Doby's Mill Elementary School, he was counseled at least three times about his work performance, including a warning from the principal that he would recommend termination of Plaintiff's employment if his job performance did not improve. Of course, all of this was before Plaintiff suffered any injury or alleged any disability.

The Magistrate Judge then reviewed the events occurring near the time of Plaintiff's termination. Plaintiff returned to work on January 7, 2008, and at that time, he was not under any medical restrictions that would have effected his job performance. He met with several school officials that provided him with specific, written instructions about what was expected of him and his job duties. Over the next few days after his return, Plaintiff continued to unsatisfactorily perform his job and failed to meet the standards his supervisors had outlined for him in the meeting. This was the last time Plaintiff actually performed his job duties, because, although another meeting was scheduled between School District employees and

---

[1] To establish a prima facie case for wrongful discharge on the basis of the ADA, a plaintiff must prove four elements: "(1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Haulbrook v. Michelin N. Am., Inc.,* 252 F.3d 696, 702 (4th Cir. 2001).

8

Plaintiff for January 18, 2008, Plaintiff was out of work again on January 14 because of pain he experienced all over his body. After his doctor opined that he could only perform light duty work, Plaintiff remained away from his work because the school did not have any light duty positions available for him. Subsequently, Plaintiff went to the District Office and made some threatening statements, and ultimately Plaintiff was terminated.

Therefore, at the time of his discharge, Plaintiff was not performing his job at a level that met his employer's legitimate expectations, this is even so when he was not under any alleged disability. Moreover nothing indicates that the School District's expectations were not legitimate. In his objections, Plaintiff argues that he did meet the School District's legitimate expectations when taking into consideration the restrictions placed on him by doctors. He also argues that he was not given the proper tools to perform the jobs required of him given his physical restrictions. To support his position, Plaintiff provided the court with two physicians' statement made in October of 2007. One statement noted that Plaintiff could work at his usual job description, but at a slower pace; while the other noted stated contrarily that Plaintiff was limited to light duty—that is, Plaintiff could not lift, push or pull, over 20–40 pounds, could only do ground level work, and should avoid repeated bending, stooping, or squatting.

Despite these objections by Plaintiff, the record, as already discussed, reveals that Plaintiff was having job performance problems at times when Plaintiff was under no physical restrictions, including the start of his employment with the District between March through June of 2006, as well as near the end of his employment in January of 2008. The doctors statements' from October of 2007, submitted with Plaintiff's objections, do not explain his poor performance during these time periods, nor do they show that Plaintiff was satisfying

9

the School District's legitimate expectations at the time of his termination. Accordingly, the court adopts the Magistrate Judge's recommendation and grants the Defendants' motion for summary judgment with respect to Plaintiff's wrongful discharge claim.

B.  **Failure to Accommodate**

Next, Plaintiff claims that the School District failed to accommodate his disability under the ADA.[2] Although it is unclear as to whether or not Plaintiff had a "disability" that qualified as such within the meaning of the ADA, the primary element of this claim challenged by the School District is that there were no reasonable accommodations that could be made for Plaintiff to perform the essential functions of his position. Plaintiff contends that he made numerous requests to the School District for help in performing his work. He claims that he asked for (1) a golf cart and a riding lawn mower to help him get around the school grounds; (2) help from his two custodian co-workers to perform some of his tasks for him; and (3) a promotion to head custodian, because he claims that position would have been less physically demanding. The School District denied all of these requests.[3] After reviewing the record and the applicable law, the Magistrate Judge agreed with the School District and determined that Plaintiff failed to show that he could have performed the essential functions of his job if he had been given all the accommodations he requested. Thus, he recommended the court to grant the School District's motion for summary judgment.

In his objections, Plaintiff again complains that he was not given proper equipment

---

[2] To establish a prima facie case under the ADA for failure to accommodate a disability, a plaintiff must show: "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . .; and (4) that the [employer] refused to make such accommodation." *Rhoads v. F.D.I.C.,* 257 F.3d 373, 387 n.11 (4th Cir. 2001).

[3] The School District denies that Plaintiff ever made these requests, but the court is tasked with deciding the motion before it while viewing the evidence in the light most favorable to Plaintiff.

to perform his jobs and he was forced to perform his job duties without any consideration for the restrictions placed on him by his doctors. As a part of his objections, Plaintiff attached a letter from a school official, which informs other School District officials that Plaintiff is under no restrictions and can perform his regular work duty. Plaintiff believes this letter is proof that he was forced to perform all of his job duties without being accommodated for his physical restrictions, especially in light of one doctor's opinion dated October 15, 2007, that Plaintiff should be limited to "light duty" work. According to this doctor, Plaintiff's medical restrictions prohibited him from lifting, pushing or pulling over 20 to 40 pounds, required him to perform ground work and avoid heights and ladders, and sought to have him avoid repeated bending, stooping, or squatting. The problem with Plaintiff's argument is that another physician's statements dated October 5, 2007, which he also attached to his objections, states that Plaintiff was able to work at his usual job description, just at a slower pace. Therefore, the School District could have believed that Plaintiff was capable to perform his duties.

Even so, the court agrees with the Magistrate Judge's analysis of the Plaintiff's requests for accommodations. With respect to the golf cart and lawn mower, Plaintiff testified at his deposition that he was never specifically denied access to these two vehicles; rather, he was instructed to get in touch with maintenance about the possibility of using them, which Plaintiff never did. Additionally, although a golf cart would have helped Plaintiff with any walking restrictions he had, his last doctor opined that Plaintiff could only work light duty, which consisted of restrictions on bending, stooping, squatting, pushing, continuous standing, lifting, etc. Therefore, a golf cart or lawn mower would not have helped Plaintiff cope with these other restrictions so that he could perform the essential functions of his job.

As for Plaintiff's proposal to make him the head custodian, the court agrees with the School District and the Magistrate Judge that Plaintiff has failed to offer proof that he could perform his custodian job, let alone perform the duties required of a head custodian. Thus, he was not likely qualified for the position. Moreover, Plaintiff never applied for the position, and an employer is not required to promote an employee to satisfy the requirements of the ADA. What is more, the head custodian position has physical requirements of climbing, balancing, stooping, crouching, and lifting 20–50 pounds, etc., all of which Plaintiff was prohibited from doing at the time of his departure. Therefore, the court declines to accept Plaintiff's assertion that the School District violated the ADA by not making him head custodian.

Nor does the court find merit in Plaintiff's argument that the School District failed to accommodate his disability by not requiring two of his co-workers to perform some of his duties for him. As the Magistrate Judge noted, "the ADA does not require an employer to reallocate essential job functions or assign an employee 'permanent light duty.'" (R&R at 15–16 (citing *Crabill v. Charlotte Mecklenburg Bd. of Educ*, Nos. 10-1539, 10-1553, 2011 WL 1491230 (4th Cir. April 20, 1022).) Because reducing Plaintiff's workload would have shifted his duties to other custodians at the school, thereby increasing their workload, such an "accommodation" would be unreasonable, rather than reasonable. *See id.* at *8. And as already discussed above, Plaintiff had job performance issues arise during times when he was not under any restrictions by his physicians, and some of his performance issues did not relate to his physical ability to do his job. As the record reflects, he was counseled for being aggressive with a teacher after she reported his failure to clean his room; for inappropriate conduct in the presence of parents, students and staff in the cafeteria; for failing to show up

12

for work and for failing to notify his superior that he would be out; for disrupting classes while they were in session; and lastly, for making threats at the School District office when seeking information related to disability benefits.

Accordingly, the court agrees with the Magistrate Judge that Plaintiff has not established that he could perform the essential functions of his job, even with reasonable accommodations. The court, therefore, grants the School District's motion for summary judgment with respect to this claim.

## II.     **Defamation**

Plaintiff also alleged in his complaint that the Assistant Superintendent of Human Resources and a teacher at Pine Tree Hill Elementary School defamed him when they gave statements, which he alleges to be untrue. The statements made by the teacher relate to a time at work when Plaintiff suffered an injury. He claims that he slipped and fell in the cafeteria, resulting in a concussion. The teach gave a statement that contradicted the Plaintiff's. She stated that she did not see the Plaintiff slip and fall and hit anything, but instead, that she witnessed him literally lie down on the ground and that he started to moan loudly. Plaintiff claims the Assistant Superintendent of Human Resources defamed him by reporting his alleged threats made that the School District Office to the police and placing false information in the letter to him advising him that she was recommending that he be terminated.

After consulting the law applicable to a defamation cause of action in South Carolina, the Magistrate Judge recommended that these Defendants be granted summary judgment. He determined that both Defendants were entitled to qualified privilege because both statements were made in good faith and to protect their interests as well as the interests of Pine Tree Hill

13

Elementary School and the School District. Moreover, under South Carolina law, "[c]ommunications between officers and employees of a corporation are qualifiedly privileged if made in good faith and in the usual course of business." *Conwell v. Spur Oil Co.*, 240 S.C. 170, 179, 125 S.E.2d 270, 275 (1962). In his objections, Plaintiff reiterates the argument he made to the Magistrate Judge, that it is his belief that the statements made by the Defendants are false. He has not produced any new evidence or argument to support a finding that these two Defendants abused the qualified privilege in either of the statements they made. As such, the court adopts the Magistrate Judge's recommendation, and renders judgment as a matter of law for these Defendants.

### III.    Retaliation in Violation of the Workers' Compensation Act & Constitutional Violations

Pursuant to 42 U.S.C. § 1883, Plaintiff alleges that the School District violated his constitutional rights when it informed him that he could not return to Pine Tree Hill Elementary School for any reason during the pendency of the investigation concerning his alleged threatening remarks at the School District Office and without prior expressed permission from the Superintendent or Assistant Superintendent for Human Resources. Although Plaintiff did not explicitly designate which constitutional right he believed was violated, he contends that these restrictions prohibited him from voting or attending PTA meetings at Pine Tree Hill Elementary School. Plaintiff also alleges that he was discharged as retaliation for instituting workers' compensation proceedings against the School District in violation of South Carolina's workers' compensation statute, S.C. Code Ann. § 41-1-80.

After considering Plaintiff's arguments, the Magistrate Judge determined that the Defendants were entitled to judgment as a matter of law as to these claims. He recognized that under our law school authorities have the right to maintain security at public schools, and

to the extent the Defendants felt the need to do so, they were entitled to qualified immunity. Therefore, he believes the Plaintiff's cause of action for constitutional violations fails. Moreover, the Magistrate Judge believed the Defendants are entitled to judgment as a matter of law with respect to his retaliation claim because Plaintiff did not commence his workers' compensation proceedings until after his employment was terminated. Plaintiff did not specifically object to the Magistrate Judge's recommendations on these matters; therefore, the court is not required to give any explanation for adopting these recommendations. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). After reviewing the Magistrate Judge's analysis, the court agrees with the Magistrate Judge's analysis and grants the Defendants' motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the court adopts the Magistrate Judge's report and recommendation in its entirety. In doing so, it grants the Defendants' motion for summary judgment and denies Plaintiff's motion for summary judgment. This case is closed.

IT IS SO ORDERED.

*[Signature: Joseph F. Anderson, Jr.]*

August 3, 2011　　　　　　　　　　　　　　　Joseph F. Anderson, Jr.
Columbia, South Carolina　　　　　　　　　　United States District Judge